Law Offices of Dana Wefer, LLC
Dana Wefer, Esq.  Bar No:
036062007
375 Sylvan Avenue, Suite 32
Englewood Cliffs, NJ 07030
973-610-0491

| | |
|---|---|
| KATHLEEN WRIGHT-GOTTSHALL, MELANI BORODZIUK, JILL MATTHEWS, JILL SKINNER, SANDRA GIVAS, DONNA ANTONIELLO, JENELL DECOTIIS, JENNIFER DOUGHERTY, MELISSA FARRELL, ALYSON STOUT, HEATHER HICKS, CHRISHA KIRK, DAVID TARABOCCHIA, DEBORAH ALDIERO, GINA ZIMECKI, KERI WILKES, and MICHELE PELLICCIO, NATALIE GRICKO, PATRICIA KISSAM, ROSEANNE HAZLET, VINCENIA ANNUZZI,JASON MARASCO, JENNIFER MESS, and KIM KOPPENAAL<br><br>Plaintiffs,<br><br>vs.<br><br>THE STATE OF NEW JERSEY, GOVERNOR PHILIP MURPHY (in his official capacity), THE NEW JERSEY SUPREME COURT, CHIEF JUSTICE STUART RABNER (in his official capacity), GLENN A. GRANT (in his official capacity) and THE NEW JERSEY OFFICE OF LEGISLATIVE SERVICES<br><br>       Defendants. | IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br><br>    CIVIL ACTION<br><br>**<u>VERIFIED COMPLAINT FOR DELCARATORY AND INJUNCTIVE RELIEF</u>** |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

   Plaintiffs Alyson Stout, Heather Hicks, Kathleen Wright-Gottshall, Kim Koppenaal, Melani Borodziuk, Chrisa Kirk, David Tarabocchia, Deborah Aldiero, Donna Antoniello, Gina Zimecki,

Jason Marasco, Jenell DeCotiis, Jennifer Dougherty, Jill Matthews, Jill Skinner, Keri Wilkes, Melissa Farrell, Michele Pelliccio, Natalie Gricko, Patricia Kissam, Roseanne Hazlet, Sandra Givas, and Vincenia Annuzzi (collectively "Plaintiffs") by and through their counsel, complain against Defendants The State of New Jersey ("New Jersey"), Governor Philip Murphy ("Governor Murphy"), Chief Justice Stuart Rabner ("Chief Justice Rabner"), Glenn A Grant ("Mr. Grant") and the Office of Legislative Services ("OLS") as follows:

## INTRODUCTION

1. This is a civil action for declaratory and injunctive relief arising under the Fourteenth Amendment to the United States Constitution.

2. It concerns the constitutionality of mandates put in place by all three branches of government of the state of New Jersey. This includes an executive order promulgated by Governor Philip Murphy titled "Instituting Vaccination or Testing Requirement for All Preschool to Grade 12 Personnel and for All State Workers" (EO 253), a judiciary policy promulgated by New Jersey Supreme Court's Chief Justice Stuart Rabner and the Administrator of Courts Glenn A. Grant, which applies to all public employees who work for the judiciary ("the Judiciary Mandate"), and an OLS mandate (collectively the three mandates are referred to herein as "The Testing Mandates").

3. All The Testing Mandates require that employees who have not received one of the Covid-19 pharmaceuticals manufactured by Johnson and Johnson subsidiary Jannsen ("J&J"), Pfizer, Inc. ("Pfizer") or Moderna, Inc. ("Moderna") (collectively "the Covid-19 injections") submit to ongoing medical testing and medical surveillance.

4. The Mandates violate the liberty and privacy rights protected by the Fourteenth Amendment to the U.S. Constitution, including the right to refuse medical procedures and the right to not be medically surveilled by government actors. It also violates the Equal Protection clause of the 14th Amendment, the 4th Amendment prohibition on unreasonable search and seizure, and the procedural due process clause.

## JURISDICTION AND VENUE

5. This action arises under the Fourteenth Amendment to the U.S. Constitution.

6. This Court has jurisdiction over all claims pursuant to the Declaratory Judgment Act as codified at 28 *U.S.C.* Sections 2201 and 2202.

7. Venue is proper under 28 *U.S.C.* Section 1391(b) because Defendants are located in this District and because a substantial part of the events giving rise the claim occurred in this District.

**PARTIES**

8. Plaintiffs are all government employees or contractors subject to EO 253 or The Judiciary Mandate.

9. Defendant State of New Jersey is the state government of New Jersey.

10. Defendant Governor Philip Murphy is the Governor of New Jersey and the person who signed Executive Order 253.

11. Defendant Chief Justice Stuart Rabner is the Chief Justice of the New Jersey Supreme Court and is responsible for The Judiciary Mandate.

12. Defendant Glenn A. Grant is the administrator and is also responsible for The Judiciary Mandate.

13. Defendant OLS is of the legislative branch of government and is forcing OLS employees who have not taken a Covid-19 injection or who decline to disclose to the government whether they have taken an injection to submit to weekly medical testing.

**FACTUAL BACKGROUND**

**1. Executive Order 253: The State Testing Mandate**

14. On August 23, 2021 Governor Murphy signed EO 253. Exhibit 1.

15. Broadly, EO 253 requires all people who work or contract in any public or private K-12 school in New Jersey to either prove that they have taken one of the Covid-19

injections or submit to frequent medical testing.

16.  EO 253 requires all "covered settings" to maintain a policy that requires all "covered workers" to either provide proof of being "fully vaccinated" or submit to covid-19 testing at minimum one to two times weekly "until they are fully vaccinated." Ex A at ¶¶1, 5.

17.  EO 253 is clear that weekly or twice weekly testing is a floor, not a ceiling, and that local districts are free to force employees to submit to more frequent testing: "a covered setting may also maintain a policy that requires more frequent testing of covered workers." *Id.* at ¶7.

18.  "Covered workers" is defined as all full and part time employees, substitute teachers, contractors, providers, and any other person whose job requires them to make regular visit to the covered settings, including volunteers. *Id.* at ¶5.

19.  "Covered settings" is defined as: "public, private, and parochial preschool programs,and elementary and secondary schools, including charter and renaissance schools." *Id.* at ¶1.

20.  EO 253 does not include state workers in the definition of "covered workers," or state offices in the definition of "covered settings," but the mandate is being applied to state workers anyway.

21.  EO 253 does not include legislative branch employees in the definition of "covered workers," but the mandate is being applied to them anyway as well.

22.  Covered settings are required to collect employee medical data and to submit that data to the local health departments. *Id.* at ¶4.

23.  Under EO 253, people who refuse to disclose their medical status to the government are considered "unvaccinated" and are subject to the coerced medical testing by the government. *Id.* at ¶6.

24.  The State Director of Emergency Management, who is the Superintendent of Police, is granted unfettered discretion to expand EO 253's scope without limitation:

> The State Director of Emergency Management, who is the Superintendent of State Police, shall have the discretion to make additions, amendments, clarifications, and exclusions to the terms of this Order.

*Id.* at 10.

25.  The Department Of Health commissioner is authorized to issue a "directive supplementing the requirements outlined in this Order, which may include, but not be limited to, any requirements for reporting vaccination and testing data to the DOH" without having to comply with the requirements of the Administrative Procedures Act. *Id.* at ¶8.

26.  Every government entity and actor in New Jersey is

required to enforce Order 253.  The EO states:

> [I]t shall be the duty of every person or
> entity in this state or doing business in this
> state and of the members of the governing body
> and every official, employee, or agent of
> every political subdivision in this state and
> of each member of all other governmental
> bodies, agencies, and authorities in this
> state of any nature whatsoever to cooperate
> fully in all matters concerning this Order,
> and to cooperate fully with any administrative
> orders issued pursuant to this order.

*Id.* at 11.

27.  Criminal prosecution and penalties are authorized

against any government entity that takes any action in

conflict with EO 253.  The Order provides:

> [N]o municipality, county, or any other agency
> or political subdivision of this state shall
> enact or enforce any order, rule, regulation,
> ordinance, or resolution which will or might
> in any way conflict with any of the provisions
> of this Order, or which will or might in any
> way interfere with or impede its achievement.

*Id.* at 12.

28.  Violations of EO 253 may result in up to 6 months

imprisonment and a fine of up to $1,000. *Id.* at 13.

29.  EO 253 is remain in effect until revoked by the

governor. *Id.* at 14.

**2. The Judiciary Testing Mandate**

30.  On August 6, 2021 the New Jersey Judiciary announced

that all state court judges and staff would be required to

either provide proof that they have taken one of the Covid-19 injections or submit to weekly medical testing to prove they are not infected with covid. Exhibit 2.

31.   The memorandum states that "the Delta variant is spreading across New Jersey and the nation" and that "Covid-19 trends are worsening."  At the time the memo was written, the Judiciary stated that the "rate of transmission is substantial or high in nearly all areas of our state." *Id.*

32.   However, at the time the memo was written and the weeks preceding it, transmission rates were actually moderate or low throughout the state. *See* Exhibits 3, 4, 5, 6.

33.   The August 6, 2021 memo acknowledges that breakthrough infections occur. Ex. 2.

34.   The memo states that according to data since late July .13% of the people who test positive for the virus were full vaccinated "and only half of those showed symptoms." *Id.*  The memo states that "in recent months, only .004% of fully vaccinated individuals in New Jersey have acquired a case of Covid-19 that required hospitalization, and just .001% of the fully vaccinated have died due to Covid-19 related complications."  *Id.*

35.   However, the memo does not provide any numbers for people who have chosen not to take the covid-19 injections or

people who have acquired natural immunity through recovery, so there is no baseline for comparison in these populations.

36. On August 11, 2021 Chief Justice Stuart Rabner sent a broadcast message to judiciary employees acknowledging that "the choice to get vaccinated is personal and private, and we recognize that it may be influenced by various factors." Exhibit 7.

37. The policy states that it "recognizes and respects the rights of individuals to decline vaccination on religious, medical, and other grounds."

38. The message stated: "The Judiciary is not mandating vaccination" but is "[i]nstead permitting employees to choose between vaccination or weekly testing so as to respect those individual choices and also to reduce to the extent possible risks to other employees and the public." *Id.*

39. Also on August 11, 2021 Defendant Glenn A. Grant issued a memo to "All State Court Judges and Judiciary Staff." Ex. 9.

40. Collectively the memorandum and two broadcast messages are referred to herein as "The Judiciary Testing Mandate."

41. Under the Judiciary Testing Mandate, all employees of the Judiciary must either take a Covid-19 injection or

submit to weekly testing.

42.  The Judiciary developed an application specifically for this purpose ("the Judiciary Medical Surveillance App").

43.  Employees who are not "fully vaccinated" must comply with a number of conditions "unless and until they are fully vaccinated."

44.  Employees who do not take a Covid-19 injection must:

    a. Undergo weekly medical tests performed by "an approved testing facility;"

    b. undergo the medical testing between Saturday morning and Wednesday night of each week and submit those results no later than Friday morning at 11am; and

    c. submit their tests results to Human Resources through the Judiciary Medical Surveillance App.

45.  The Judiciary Testing Mandate states that its "preference is for testing to be conducted outside of working hours."  Under an updated policy, employees may undergo testing during working hours, but they must specifically request time for "covid testing" from their supervisor, thereby being compelled to disclose their medical status to their supervisor.

46.  If a person's test is not uploaded to the app by 11am on Friday morning, they are excluded from the work location on the next scheduled workday and may be excluded for up

to 24 hours *after* they have submitted the negative test. The Judiciary Testing Mandate provides an example: "if the employee submits negative test results on Monday morning, they may not be permitted to return to the work location until Tuesday morning." *Id.*

47. If an employee does not submit medical test results on time, they must take administrative, sick, or vacation time unless a determination is made by unnamed persons that "judiciary policy and operational needs" allow the employee to work remotely. *Id.* If the person is out of administrative, sick, and vacation time, "the absence will be considered unauthorized and unpaid."

48. Even if the employee uses available administrative, sick, or vacation time, they still may be subject to discipline for "chronic unscheduled absences" for repeated failure to submit medical test results by the Friday deadline. *Id.*

49. Employees subject to The Judiciary Testing Mandate are required to schedule and pay for their own medical testing.

50. Additional leave time, including Covid-19 sick leave, cannot be used for time taken out to undergo the medical test or time lost because they were not able to upload the results in time. *Id.*

**3. The Plaintiffs**

51.   Plaintiffs represent every branch of government.  They represent employees of public schools, private schools, executive agencies, the judiciary, and independent consultants who are engaged by schools and the state to provide services.

52.   Plaintiff Kathleen Wright-Gottshall is a kindergarten teacher in her 37th year as a teacher. She is eligible for retirement, but loves her chosen career and wants to continue teaching. However, Plaintiffs' religious beliefs prevent her from complying with EO 253, so she may be forced to leave. She applied for a religious exemption, but it was denied as an undue hardship due to "security" issues. Exhibit 9, Decl. of Kathleen Wright-Gotshall at ¶ ¶5-7. A true and accurate copy of the denial for Ms. Gottshall's religious exemption request is annexed hereto as Exhibit 10.

53.   Ms. Wright-Gottshall's privacy and right to bodily autonomy are also intruded on by EO 253. She is very conscious of her health and has lived a vegan lifestyle for a decade to provide her body with long term health benefits. She is concerned about the safety of both the covid-19 injections and the nasal swabs. *Id.* at ¶ ¶10, 12.

54.   Plaintiff Melani Borodziuk is an administrative assistant. She is immune to covid through recovery. Exhibit

11, Decl. of Melani Borodziuk at ¶¶5-6.

55. Ms. Borodziuk's school district is requiring her to be tested on her own time and at her own expense. She must take the test on a Friday, Saturday, or Sunday to submit her results by a Monday deadline. *Id.* at ¶¶8-9.

56. Ms. Borodziuk is concerned about the privacy of her medical information. She asked her superintendent who has access to her vaccination status and he said that only he and the nurse did. However, shortly thereafter, he emailed Ms. Borodziuk asking her to collect the coaching staff's vaccination cards, information to which she should not have access, which makes her suspect about privacy controls. *Id.* at ¶11.

57. Ms. Borodziuk has been treated for two separate cancers, including one on her nose. She does not want to be exposed to the known carcinogen ethylene oxide, which is used to sterilize the testing swabs. *Id.* at 13.

58. The Injection/Medical Testing ultimatum has taken a severe emotional toll on Ms. Borodziuk. She is a mother of two young children, and she is afraid that she will develop cancer from repeated exposure to the swabs, especially in the same place where she already had cancer. She is losing sleep and her appetite from the fear and stress EO 253 has caused her. *Id.* at ¶13.

59. Plaintiff Jill Matthews has been a teacher for 18 years. She has been working in person since October of 2020 and was never subjected to medical testing in that time. Ms. Matthews is immune to covid from recovery. She has been tested twice for antibodies and both times the test came back positive. Exhibit 12, Decl. of Jill Matthews at ¶¶5-7.

60. Ms. Matthews has been subjected to mandatory testing since September 2, 2021. She has experienced painful and lingering effects from the medical tests. She has never been the type of person who got headaches, but she has been developing severe headaches since beginning testing. On Monday September 6th, she developed a headache after testing that lasted for an entire week. She began to rinse her nostrils out after she has the medical test, and that has lessened the severity of the headaches, but not eliminated them altogether. She is believes that it is the medical testing causing the headaches because when she missed two tests in a row, her headache subsided. When she resumed testing again, the headache came back. She is "basically living life with an ongoing low grade headache" now and takes over the counter pain medication to dull the pain each day. In addition to the headache, Ms. Matthews has suffered two nosebleeds since beginning testing. *Id.* at ¶

¶12-13.

61.  Plaintiff Kim Koppenaal is a teacher at a private high school. She has been working in person since Fall of 2020 with the exception of a few virtual weeks. She was not required to submit to medical testing through the pandemic. Exhibit 13, Decl. of Kim Koppenaal at ¶¶5-6.

62.  Ms. Koppenaal is immune to covid through recovery. *Id.* at ¶8.

63.  Her religious beliefs prohibit her from taking any of the covid-19 injections. *Id.* at 7.

64.  The medical testing regime at her school requires her to present herself for testing every Friday. If the school is closed on a Friday, then she is required to take time during the day to undergo medical testing at her own time and expense that Friday, Saturday, or Sunday and submit the results of the medical test by Monday morning. *Id.* ¶ ¶9-10.

65.  Plaintiff Jill Skinner is a Speech Language Therapist in the Newark Public schools.  She is immune to covid from recovery and has measurable antibodies. Exhibit 14, Decl. of Jill Skinner at ¶¶5-6.

66.  She has been working in person since April 2021 and was not subject to testing until September 6, 2021. *Id.* at ¶ ¶7-8.

67.   The testing regime in Ms. Skinner's district requires her to upload her medical test results by Sunday at 7pm and she must have been undergone the medical test no earlier than 7pm on Thursday. *Id.* at ¶9.

68.   One Monday Ms. Skinner was sent an email telling her that she was not permitted to work despite a negative test result because her medical test had been a few hours before 7pm on Thursday. *Id.* at ¶10.

69.   Another week Ms. Skinner underwent medical testing on Friday and the results did not come in time. She called the lab to find out why the results had not come and was told that the test was stuck on step 1 of 5 in their process. She was sent home and made to take a personal day. She was told that she cannot use a sick day "because the superintendent knows [she] is not sick and [is] just waiting for [her] test results." *Id.* at ¶¶13-14.

70.   Ms. Skinner was able to obtain a free saliva test from the county where she lives. She now uses the half hour she gets for lunch on Fridays to do the saliva test. She is required to get on a zoom call with a stranger. While the stranger watches she is required to open the test and then drip/spit saliva into the test tube until it reaches the proper line. Then she closes and seals the container. She then rushes to a UPS so she can mail the test results in a

timely manner and then returns to school to continue working. *Id.* at ¶12.

71. On days that the schools are closed on Monday, like Columbus Day, Ms. Skinner is required to upload her medical test results by Monday at 7pm. Because the test can be no earlier than 72 hours before, this requires her to undergo the medical testing after 7pm on Friday night or over the weekend. *Id.* at ¶15.

72. Ms. Skinner's medical status has been brought up and discussed in front of coworkers by her superiors. She had a meeting with the principal and other members of the Child Study Team. At the meeting, the principal pulled out a list of people who had not uploaded proof of their vaccination and stated in front of her colleagues that she was the only person in the room who had not uploaded her proof. The principal told Ms. Skinner the process for medical testing and then made Ms. Skinner repeat it back to her. The experience of having her private medical information and decisions discussed in this manner has left Ms. Skinner anxious at work. *Id.* at ¶¶16-17.

73. Plaintiff Sandra Givas is an operational assistant at public high school. She worked in person through the pandemic all last year and this year without being required to undergo medical tests. Decl. of Sandra Givas, Exhibit

15 at ¶¶5, 12.

74. Ms. Givas is extremely health conscious because since 1987 she has suffered from a health anxiety disorder, for which she is treated. She attests:

> There is nothing in life that I take more seriously, and put more effort into, than my physical, mental, and emotional health. My life is greatly affected by my health anxiety. I have lived a vegan lifestyle...I exercise regularly and am very careful about what I put into my body.

*Id.* at ¶¶7-10.

75. Medical testing is very hard for Ms. Givas due to her health anxiety. She has to prepare for medical tests weeks in advance and her doctors are aware of her disorder and know that she requires extra time to go over every number with her. She attests: "It's a very intense process." While waiting on the results of a medical test, she is "unable to focus on anything else due to the anxiety." She is "almost incapacitated" until she receives a negative result. The Testing Mandate has inflicted a serious emotional toll on Ms. Givas and is likely to lose her livelihood if it is not enjoined. *Id.* at ¶¶9-11.

76. Plaintiff Deborah Aldiero is a school nurse at a private school for autistic children. She has been working in person since September 2020, through the peak of the pandemic in December 2020/January 2021 and was not

subjected to medical testing in that time. Exhibit 16, Decl. of Deborah Aldiero at ¶¶5-6.

77. Plaintiff Alyson Stout is a physical therapist and early intervention specialist who contracts with four school districts directly through her business and also contracts with private entities who contract with the state. She loves her work and has been doing it for 25 years. Exhibit 17, Decl. of Alyson Stout at ¶¶5-9.

78. Ms. Stout is immune to covid through recovery. *Id.* at ¶11.

79. She was required to start testing on September 7, 2021 and it has been a hugely intrusive and emotionally trying experience for her. It has disrupted her personal life in a significant way. She tried to fit the government mandated medical testing into her schedule after work, but her evenings are devoted to cooking dinner for her family, walking her dogs, exercise, and just generally living her normal evening life. Instead she has had to incorporate the medical testing into her weekend. She has found the best time for her to get an appointment and go is on Sundays after church. After she undergoes the medical test, she goes straight home and sets up the appointment for the following week because she's found that if she waits longer than that, the appointments fill up before she can secure

one. One Sunday, she had to leave her stepdaughter's birthday party early to undergo the government mandated medical testing and was not able to find another appointment. It was frustrating having to leave the family event and embarrassing having to explain to her family that she has to go get a medical test. *Id.* at ¶¶15-17, 19.

80.   Ms. Stout worries about going away for a vacation, or even for a weekend, for fear of missing a medical test and not being able to work.  She worries she may have to find a place to test while she is away on vacation.  The government mandated medical testing is taking an emotional and mental toll on Ms. Stout. She attests:

> The weekly testing requirement is taking a huge toll on my mental and emotional well-being. Rather than being able to use my non-working time to relax and enjoy family time, I find myself becoming anxious about getting an appointment for testing, going for the testing appointment, and then stressing every day waiting for my results to come via email, not because I am worried I have covid, but because I am worried the results will not come back in time for me to work.

*Id.* at ¶18.

81.   Ms. Stout also has found the actual process of testing invasive and upsetting. It is embarrassing having to go through testing in a public place and the weekly testing had caused her sinuses to become very irritated. Before being forced to submit to weekly medical testing Ms. Stout

rarely had allergy or sinus issues, but not she has to use sinus rinses and saline to calm her sinuses. *Id.* at ¶¶21-22.

82. Adding further indignity to the government's imposition on Ms. Stout, she is required to cover the cost of the medical tests she does not want. *Id.* at ¶23.

83. Because Ms. Stout works for four different school districts and two state agencies it is conceivable that once they all announce their testing policies she will be forced to undergo government medical testing even more frequently if they require test results to be submitted on different days. *Id.* at 25.

84. Free testing is offered by Rite-Aid, but the free testing is done through a program called "Project Baseline," which sends her private medical information to the government and other unidentified third parties. This violates her privacy so she will not test there. *Id.* at ¶24.

85. Ms. Stout knows that her private medical information is being shared and will be shared throughout government entities and among the people who work there. She will have to report her medical information to each of the four districts with which she contracts and she is already required to share her information with the private entities with which she contracts. She is required to email her

medical information to employees at the agencies. She does not know what they do with her medical information after she emails it to them. She does not like reporting her private medical information to strangers in this way. It is invasive of her privacy. *Id.* at 26.

86.   Plaintiff Vincenia Annuzzi has been a French teacher for 11 years. Her school district required her to begin medical testing on September 15, 2021. If she does not wish to pay for the testing herself, she must avail herself of the on-site district testing, which is only available on Wednesdays between 7:30 am and 8am. Her position requires her to be in the classroom at 7:50. Exhibit 18, Decl. of Vincenia Annuzzi at ¶8.

87.   Ms. Annuzzi's privacy is invaded by the testing process. On the first day her district required medical testing, she and other staff members who are forced to undergo the testing were told to present themselves in the school conference room and were then walked out into the hallway to another room where the medical tests are performed. Everyone who is congregated there and anyone who walks by is essentially made aware of her medical status just by virtue of her having to be there. Ms. Annuzzi's privacy is further invaded because she is forced to sign forms consenting to the disclosure of her information. *Id.* at

¶¶9-10.

88.  Plaintiff Roseanne Hazlett is employed by the State of New Jersey as a probation officer. She is subject to the Judiciary Testing Mandate. Under the policy she is required to be tested between Saturday and Wednesday and to upload a negative test result by Friday at 11am. Under the Judiciary Testing Mandate Ms. Hazlett is required to do a nasal swab test, spit tests are prohibited. Exhibit 19, Decl. of Roseanne Hazlett at ¶6.

89.  Ms. Hazlett was originally required to be tested on her own time at her own expense. She is still required to be tested at her own expense, but the Judiciary has updated its policy to allow employees to take time during work to undergo the medical test. However, to do this she must disclose to her immediate supervisor that she is subject to the Testing Mandate and the time is coded on her time sheet as "covid test." Further, she is required to submit proof that the time she underwent the medical test is the same time that she was granted time to go test, but the medical testing facility she uses to undergo the test does not time stamp, so she cannot comply with this. *Id.* at ¶7.

90.  Ms. Hazlett's vacation time was ruined by the Judiciary Medical Testing Mandate. She took off of work from September 20, 2021 to September 24, 2021 to relax at home.

However, to be able to return to work the following Monday, she was required to undergo government mandated medical testing on Wednesday September 22nd, in the middle of her vacation. The results to her test did not come in time, for reasons beyond her control. She spent the last weekend of her vacation stressed and anxious waiting for the test results so she could return to work.  She did not want to lose another day of work and day of her vacation time because she was not sick. On Monday when the test results still had not come in, she called her job and was told that she would not be permitted to work that day and would have to take "admin" time. Usually she reserves admin time for days when it is snowing because she does not drive in the snow. When the results still had not come in by Monday morning, she drove 80 miles to get a rapid test so she could return to work on Tuesday. The rapid test showed what she already knew; she was not sick. *Id.* at ¶9.

91. Ms. Hazlett has to direct a significant amount of personal time and mental energy toward complying with the Judiciary Medical Testing Mandate. Two times CVS has cancelled her test at the last moment and she has to direct her energy toward scrambling to find a rapid test so she can work. She attests: "I am so stressed all the time now because I know I have to have these test results back. I

have to plan my whole week around this." *Id.* at ¶10.

92.  In addition to intruding on her personal time and mental well-being, the medical testing is affecting Ms. Hazlett physically.  She suffers from a burning and runny nose after the medical tests. *Id.* at ¶12.

93.  Ms. Hazlett worked through the entire pandemic in the field without any stop and was never required to undergo any medical testing even through the peaks of the pandemic. *Id.* at ¶11.

94.  Plaintiff Patricia Kissam is a special education teacher at an elementary school, working with students in grades 1 through 5. She is in her 24th year of teaching. She cannot take any of the covid-19 injections because it conflicts with her sincerely held religious beliefs. In addition, she is immune to covid through recovery. Exhibit 20, Decl. of Patricia Kissam at ¶¶5-7.

95.  Ms. Kissam was tested for covid last December after she was exposed. It was a horrible experience. She experienced severe pain and felt like her brain was being stabbed. She developed a severe headache that did not go away for a week. *Id.* at ¶8.

96.  The Testing Mandate has taken an emotional toll on Ms. Kissam. She attests:

The testing mandate has been very upsetting.

> I am healthy and do not want to undergo weekly
> testing to prove my health. I worry about this
> all the time. I am chewing my nails and
> cuticles to pieces over my anxiety. I am
> despondent that I will lose my job of 24 years
> and will not have any pension vest if I do not
> submit to weekly medical testing that I do not
> want. I am unable to sleep with anxiety and
> worry.

*Id.* at ¶9.

97. Plaintiff Natalie Gricko has been a supervisor of special education in the same school for 28 years. Ms. Gricko has dedicated herself to her job and has received tenure in three different positions in her district. She is immune to covid through recovery. Exhibit 21, Decl. of Natalie Gricko at ¶¶4,5,15.

98. Ms. Gricko has not been subjected to the government mandated medical testing yet, but already her privacy has been invaded. She was required to disclose to her school district whether she had taken any of the covid-19 injections.  There was no option not to disclose. In addition, she knows that her private medical information is being shared among employees of the school because her boss told her "We know who's vaccinated and who's not." *Id.* at ¶¶10-11.

99. Plaintiff Michele Pelliccio is a Paralegal with the State of New Jersey Department of Children and Families and is purportedly subject to EO 253. Exhibit 22, Decl. of

Michele Pelliccio at ¶¶5-6.

100. The Testing Mandate is taking a severe toll on Ms. Pelliccio. She suffers from a severe case of white coat syndrome. Her blood pressure goes up very high and any medical intervention or procedure, including testing, causes her extreme anxiety. She loves her job and has earned outstanding evaluations. She intended to continue working for another ten years in her position, but she will not submit to the weekly testing and does not know what she is going to do. She sincerely does not wish for her career to end like this. *Id.* at ¶11.

101. Plaintiff Jenell De Cotiis is a special education teacher for kindergarten and first grade students. She has been a teacher for 21 years. The students in her care have multiple disabilities and require intensive hands on care. Exhibit 23, Decl. of Jenell De Cotiis at ¶¶5-6.

102. Ms. De Cotiis loves her job and worked through the peaks of the pandemic without undergoing medical testing or missing one day due to illness. *Id.* at ¶¶5,7.

103. Ms. De Cotiis is unable to take any of the covid-19 injections because it would conflict with her sincerely held religious beliefs. The ongoing medical testing also conflicts with her sincerely held religious beliefs. *Id.* at ¶¶9-10.

104. If Ms. De Cotiis is forced to undergo the government mandated medical testing, she will have to do it on her own time in the evening and at her own expense because the time for free testing offered by the school would make it impossible for her to meet her son when he gets off the bus from school. *Id.* at ¶¶11-12.

105. Plaintiff David Tarabocchia is a full time bus driver and part time custodian. He has worked through the entire pandemic non-stop. He worked through both peaks of the pandemic in March/April 2020 and December/January 2021. He worked all summer long when neither he nor the children were wearing masks. He was not forced to undergo medical testing during any of this time. Exhibit 24, Decl. of David Tarabocchia at ¶¶5-6.

106. Mr. Tarabocchia will not take any of the covid-19 injections because it would conflict with his sincerely held religious beliefs. He feels the forced testing is a violation of his privacy and religious beliefs. *Id.* at ¶¶7-8.

107. Mr. Tarabocchia has serious privacy concerns about the forced medical testing. He is required to download a phone application onto his personal phone. He is required to use this phone application to upload his medical test results to the school and he is required to hand in a physical copy

to his supervisor. He does not feel comfortable sharing his medical records with his supervisor and he is not comfortable using a phone application to upload his medical records. *Id.* at ¶9.

108. Mr. Tarabocchia is also required to pay for his own medical testing, which he cannot afford. *Id.* at ¶10.

109. The Medical Testing Mandate is taking a toll on Mr. Tarabocchia and his family. He cannot sleep at night knowing that his job is forcing him to undergo medical testing that religious and physically he does not feel safe doing. *Id.* at ¶11.

110. Plaintiff Jason Marasco is a health and physical education teacher as well as a wrestling coach. Mr. Marasco suffers from epilepsy and takes 9 pills a day to control his condition. He will not take any of the covid-19 injections because they have not been tested on people with epilepsy and he fears that they will harm him. Mr. Marasco is immune to covid through recovery. Exhibit 25, Decl. of Jason Marasco at ¶¶5,7,14.

111. Mr. Marsco's school district has been back in person since September 2020. He was out on disability from October 2020 to March 2021. All other periods he has worked full time in person and was not subjected to any medical testing in that time. *Id.* at ¶6.

112. Mr. Marasco's school district has already required him to start undergoing medical testing two days a week. To make it to work on time, he has to leave his house 20 minutes earlier on both testing days, which is stressful and essentially lengthens his working week by 40 minutes. *Id.* at ¶11.

113. In addition to robbing him of 40 minutes normally devoted to family time each week, the Testing Mandate has also intruded on Mr. Marasco's time with his family. On Columbus Day his children's school was closed, but his was not. He took the day off to be with and care for his children, but his school district requires him to be tested on Mondays or be subject to discipline. Consequently, he had to go in the morning on his day off to undergo the government mandated medical testing. *Id.* at 12.

114. Mr. Marasco is affected physically, emotionally, and mentally by the medical testing and The Testing Mandate. He has suffered from two nosebleeds and the process is painful. He has to pull away and it makes his eyes water. *Id.* at ¶13.

115. Plaintiff Donna Antoniello is a school nurse at a public school. Both the covid-19 injections and the medical testing conflict with her sincerely held religious beliefs. She has never taken a Covid-19 test and has specifically

declined testing on multiple occasions. Exhibit 26, Decl. of Donna Antoniello at ¶¶5,6,10-11.

116. Under the Testing Mandate, Ms. Antoniello would be required to undergo the medical testing in her personal time on the weekends. *Id.* at ¶ 8.

117. Plaintiff Chrisha Kirk has been an English language arts teacher in a New Jersey public school for 17 years. Ms. Kirk has declined to receive a Covid-19 injection due to her sincerely held religious beliefs, and is therefore mandated to undergo weekly medical testing under EO 253. Exhibit 27, Decl. of Chrisha Kirk at ¶¶5, 7.

118. Ms. Kirk's school district began mandating medical testing before EO 253 went into effect and had to pay $200 out of her own pocket for those tests. *Id.* at ¶11.

119. Ms. Kirk is subject to discrimination not faced by her peers who have opted for the injection. If she is identified as a "close contact" of a person who has tested positive for Covid-19, she is automatically excluded from school for 10 days and she is required to use sick days during this time. *Id.* at ¶¶15-17.

120. The Testing Mandate and its effect is taking an emotional and mental toll on Ms. Kirk.  She attests: "I am healthy, but I am being treated by the government and my employer like I am diseased." *Id.* at ¶17.

121. Plaintiff Melissa Farrell has been a special education teacher at a New Jersey public school for 16 years. Both the covid-19 injections and the medical testing conflict with her sincerely held religious beliefs. She has never been undergone testing for covid infection. Exhibit 28, Decl. of Melissa Farrell at ¶¶5,6,7,9.

122. Ms. Farrell is immune to Covid-19 due to a previous infection, and confirmed by a recent blood antibody test showing measurable antibodies. *Id.* at ¶8.

123. Ms. Farrell is extremely wary of using supposedly "safe products" on her body, having had serious health issues in the past with medical devices placed inside her body that had been declared "safe" by the FDA. *Id.* at ¶18.

124. The Testing Mandate is exactly an emotional and mental toll from Ms. Farrell. She is physically and mentally drained by the fact that she may be forced to leave her students, about whom she cares deeply, due to the forced medical testing. *Id.* at ¶14.

125. Plaintiff Keri Wilkes has been a math teacher at a New Jersey public school for 25 years. In all that time she has never been disciplined, and was teacher of the year in 2011. Both receiving a covid-19 injection and the forced medical testing conflict with her sincerely held religious beliefs. Exhibit 29, Decl. of Keri Wilkes at ¶¶5,7-8.

126. Ms. Wilkes has worked in person since September 2020, through the peak of the pandemic in December 2020/January 2021 and was not subjected to any medical testing during that time. *Id.* at ¶6.

127. Ms. Wilkes avoids all chemical intake as per her religious beliefs, including aspirin, Tylenol, etc. and does not want to be subjected to the chemicals on the testing swabs. She had requested a religious exemption due to her beliefs, but after waiting four weeks her request was denied. *Id.* at ¶¶8-10.

128. Ms. Wilkes has endured so much stress from the medical testing mandate that she loses sleep, her hair is falling out, and she has developed skin rashes. She considers the testing requirement to be a violation of her religious beliefs and bodily autonomy. Due to her religious beliefs, and she will never be "fully vaccinated" per the Executive Order. *Id.* at ¶¶12-13.

129. Plaintiff Jennifer Dougherty works in the New Jersey Office of the State Auditor, part of the Office of Legislative Services, which is of the legislative branch of government. She has never taken a Covid-19 test, but OLS has said she is required to undergo invasive medical testing that uses materials she does not trust to keep her job. Exhibit 30, Decl. of Jennifer Dougherty at ¶¶5, 9.

130. Plaintiff Heather Hicks is an elementary teacher in a New Jersey public school who has been working in person since September 2020, including through the entire summer with no masks. She was not required to undergo medical testing during this period. Ms. Hicks is immune to covid through recovery. Exhibit 31, Decl. of Heather Hicks at ¶ ¶5,6,7.

131. Ms. Hicks has declined to receive a Covid-19 injection and does not want to undergo weekly medical testing. Ms. Hicks strongly believes that the testing violates her right to make medical decisions for herself, as well as her medical privacy. She is required to fill out a daily health screening form on Google, which gives her anxiety on a daily basis. She is considering moving out of state and out of the town she grew up in to avoid the testing mandate and take back control over her own medical decisions and bodily autonomy. Since Ms. Hicks will never receive a Covid-19 injection, she will never become "fully vaccinated" per the Executive Order, and will be subjected to testing indefinitely. *Id.* at ¶¶9-11.

132. Plaintiff Gina Zimecki is a Kindergarten teacher at a public school. She has been a teacher for 25 years. Ms. Zimecki has been working in person since October 2020 and through the peak of the pandemic in December 2020/January

2021.  She was not required to undergo medical testing in that period. Exhibit 32, Decl. of Gina Zimecki at ¶¶5-6.

133. Ms. Zimecki is very health conscious and careful about what substances she puts in her body. She is concerned about using swabs in her nose, and does not want to be exposed to possible carcinogens unnecessarily. She has not been told whether she will be required to test at work or on her own personal time, but either way she will suffer either a professional or personal imposition. She suffers mental stress due to the worry about when and how her testing will need to happen, and whether how she will pay for it. *Id.* at ¶¶7-9, 11.

134. Plaintiff Jennifer Mess has been the activity arts educator at a public middle school in Middletown, NJ for 21 years.  She has been working in person since September 2020, including through the pandemic peak of December 2020/January 2021. She was not subject to medical testing in that time. The covid-19 injections and the medical testing both violate her sincerely held religious beliefs. Exhibit 33, Decl. of Jennifer Mess at ¶¶5,6,11.

## CONSTITUTIONAL CLAIMS

### I.

### THE TESTING MANDATES VIOLATES THE FOURTH AMENDMENT PROHIBITION ON UNREASONABLE SEARCH AND SEIZURE

135. Plaintiffs repeat and reallege each of the preceding paragraphs.

136. The Testing Mandates are unreasonable.

137. The Mandates violate the Fourth Amendment prohibition on unreasonable search and seizure and the right for the people to be secure in their persons and property.

## II.

## THE TESTING MANDATES VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT RIGHT TO PRIVACY

138. Plaintiffs repeat and reallege all of the preceding paragraphs as if set forth at length herein.

139. The Testing Mandates all involve extensive medical tracking and surveillance. Persons subject to the Mandates are subject to invasions of their privacy in multiple and layered ways:

  a. They are required to undergo medical testing;

  b. They are required to report their medical test results to the their employer;

  c. Many are required to report their medical test results to multiple people at their place of employment;

  d. Many are required to upload their medical test results to a third-party application;

  e. Their medical test results are reported to local health authorities;

    f. Their medical test results are reported to the state;

    g. Their medical test results are put in a database by the state;

    h. They are required to report their test results through various smartphone applications.

140. There are serious privacy issues with all of the policies, and little concern seems to be paid to the privacy of persons being subjected to the testing mandates.

141. There is no legal or historical precedent or support for the government to require public employees to submit to ongoing invasive medical testing and continually report their health status to a state entity.

142. The lack of precedent is *prima facie* evidence that the liberty to be free from invasive testing and medical surveillance by the state is fundamental and deeply rooted in the country's history and tradition.

143. The state's interest in stemming the spread of Covid-19 must be weighed against the individual right to privacy.

144. The individual's right to be free of medical surveillance and a systemic regime of medical testing by the government entity outweighs the state's interest.

145. The policies are not narrowly tailored to achieve the government's stated interests.

146. The Testing Mandates present Plaintiffs with an

ultimatum to undergo either a medical procedure or ongoing and indefinite medical testing.

147. Plaintiffs' privacy rights permit them to decline both the medical procedures and the medical testing.

148. The Testing Mandates are unconstitutional under the 14th Amendment right to privacy.

### III.
### THE TESTING MANDATES VIOLATE PLAINTIFF'S FOURTEENTH AMENDMENT LIBERTY RIGHTS

149. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

150. Plaintiffs have the fundamental liberty right to be free from the coerced medical testing required by The Testing Mandates.

151. The Testing Mandates present Plaintiffs with an ultimatum to undergo either a medical procedure or ongoing and indefinite medical testing.

152. Plaintiffs' liberty rights permit them to decline both the medical procedures and the medical testing.

### IV.
### THE TESTING MANDATES VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

153. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

154. Plaintiffs have the fundamental right to be free from

the coerced medical testing required by The Testing Mandates.

155. Plaintiffs have the fundamental right to decline the Covid-19 injections.

156. Plaintiffs are being subjected to disparate and unequal treatment based on the exercise of their fundamental rights.

157. The Testing Mandates violate the equal protection clause of the Constitution.

## V.
## THE TESTING MANDATES VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE OF THEIR RELIGION UNDER THE FIRST AMENDMENT

158. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

159. Several Plaintiffs are unable to comply with The Testing Mandates because both the Covid-19 injections and the ongoing testing conflict with their sincerely held religious beliefs.

160. The Mandates present an undue burden on Plaintiffs' sincerely held religious beliefs and unconstitutionally interfere with the free exercise of their religion.

161. The Testing Mandates violate the First Amendment of the Constitution.

## VI.

### VIOLATION OF 42 U.S.C. §1983

162. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth fully herein.

163. Governor Philip Murphy, Chief Justice Stuart Rabner, and Glenn Grant have violated Plaintiffs' Constitutional rights while acting under the color of law.

## VII.

### VIOLATIONS OF THE NJ STATE CONSTITUTION ARTICLES 4, 5 AND 7

1. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth fully herein.

2. The Testing Mandates are an unreasonable search and seizure under Article 7 of the Constitution.

3. The Testing Mandates violate Articles 4 and 5 of the Constitution because they deprive certain Plaintiffs of their right to freely practice their religion as a condition of holding public employment.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

4. Declare EO 253 unconstitutional on its face and as applied;

5. Declare The Judiciary Testing Mandate unconstitutional on

its face and as applied to each Plaintiff;

6. Declare the OLS Testing Mandate unconstitutionally
   facially and as applied;

7. Enjoin The State of New Jersey from enforcing EO 253;

8. Enjoin Chief Justice Stuart Rabner and Glenn Grant from
   enforcing The Judiciary Testing Mandate;

9. Enjoin OLS from enforcing its Testing Mandate;

10. Grant Plaintiffs their costs and attorneys' fees under
    42 U.S.C. Section 1988 and any other applicable
    authority; and

11. Grant any and all other such relief as this Court
    deems just and equitable.

Respectfully submitted,

s/ Dana Wefer, Esq.

Dana Wefer, Esq.
Attorney at Law
375 Sylvan Ave, Suite 32
Englewood Cliffs, NJ 07075
Phone:  (973) 610-0491
Fax:  (877) 771-2211
Email: DWefer@WeferLawOffices.com
Attorney for Plaintiffs

Dated:    October 18, 2021

## COMPLAINT VERIFICATION

Each of the Plaintiffs has sworn in the attached and incorporated Declarations that all facts pertaining or relating to them are true under penalty of perjury.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: October 18, 2021          /s Dana Wefer, Esq.
                                 Dana Wefer, Esq.
                                 Attorney at Law
                                 375 Sylvan Ave, Suite 32
                                 Englewood Cliffs, NJ 07075
                                 Phone:  (973) 610-0491
                                 Fax:  (877) 771-2211
                                 Email: DWefer@WeferLawOffices.com
                                 Attorney for Plaintiffs

JS 44 (Rev. 04/21)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KATHLEEN WRIGHT-GOTTSHALL, MELANI BORODZIUK, JILL MATTHEWS, JILL SKINNER, et al. | State of New Jersey, Governor Philip Murphy, Chief Justice Stuart Rabner, Glenn A. Grant, Office of Legislative Serv. |

| (b) County of Residence of First Listed Plaintiff  Ocean | County of Residence of First Listed Defendant  Mercer |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Law Offices of Dana Wefer, 375 Sylvan Ave, Suite 32, Englewood Cliffs, NJ 07632 | |

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Constitution

Brief description of cause:
Defendants instituted unconstitutional medical testing mandate for state workers

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☐ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 10/18/21 | /s Dana Wefer |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
  Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.