# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WRIGHT-GOTTSHALL et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>*Defendants*. | Civil Action No.<br>3:21-cv-18954-PGS-DEA<br><br>**MEMORANDUM** |

Twenty-three plaintiffs commenced this action against the State of New Jersey, Governor Philip Murphy (in his official and personal capacity), the New Jersey Supreme Court, Chief Justice Stuart Rabner (in his official and personal capacity), Glenn A. Grant, J.A.D. (in his official and personal capacity) and the New Jersey Office of Legislative Services (collectively, "Defendants"). Plaintiffs are government employees or contractors who chose not to be vaccinated against COVID-19 and therefore, were required to comply with the COVID-19 testing mandates put in place by the Executive, Legislative and Judiciary branches of the New Jersey State government. By way of this action, Plaintiffs seek declaratory and injunctive relief and damages arising out of alleged violations of their constitutional rights in connection with the testing mandates. Specifically, Plaintiffs asserts violations of their First Amendment right to free exercise of

1

religion, Fourth Amendment right to be free from unreasonable search and seizure, Fourteenth Amendment rights to liberty and privacy and the Equal Protection Clause, and rights under the New Jersey State Constitution. They also assert violations of 42 U.S.C. § 1983. Each plaintiff submitted a sworn declaration setting forth the reasons why the mandate applicable to him or her imposed a hardship or inconvenience and violated his or her constitutional rights. (ECF Nos. 34-9 – 34-32).

On January 18, 2022, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 10). While that motion remained pending, on August 5, 2022, Plaintiffs filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction, which sought to enjoin Defendants from enforcing the testing mandates. (ECF No. 19). Following the termination of all three mandates, on August 29, 2022, Plaintiffs withdrew their motion. (ECF No. 29).

In addition, while Defendants' Motion to Dismiss remained pending, Plaintiffs moved for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2). (ECF No. 27). The proposed amendments sought to hold Governor Murphy, Chief Justice Rabner and Administrative Director Grant (the "Individual Defendants") liable in their personal capacity and seek damages against Defendants because "most Plaintiffs had not been damaged when the Complaint

2

was originally filed so damages could not have been plead [sic] at that time." (ECF No. 27 at 3). The Court granted Plaintiffs' Motion for Leave and simultaneously terminated Defendants' Motion to Dismiss without prejudice. (ECF No. 33). On September 23, 2022, Plaintiffs filed an Amended Complaint, which seeks relief in the form of consequential, emotional and punitive damages. (ECF No. 34).

Thereafter, Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(1) and (6), which is presently before the Court. (ECF No. 36). For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

## I.

### A. The Executive Mandate

In response to the public health emergency caused by the COVID-19 pandemic, on August 23, 2021, Governor Murphy issued Executive Order 253 ("EO 253"). (Am. Compl. ¶ 14; ECF No. 34-1). EO 253 mandated that "[a]ll public, private and parochial preschool programs and elementary and secondary schools, including charter and renaissance schools ("covered settings") . . . maintain a policy that requires all covered workers to either provide adequate proof to the covered setting that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly." (Am. Compl. ¶¶ 15-16; ECF No. 34-1). To satisfy the testing requirement, EO 253 mandated a covered worker

undergo testing one to two times per week  on an ongoing basis until fully

vaccinated. (Am. Compl. ¶¶ 16-17; ECF No. 34-1). "Covered workers" included

"all individuals employed by the covered setting, both full- and part-time." (Am.

Compl. ¶ 18; ECF No. 34-1). EO 253 went into effect on October 18, 2021. (ECF

No. 34-1).

Subsequently, on August 15, 2022, Governor Murphy issued Executive

Order 302 ("EO 302"), which rescinded EO 253 effective immediately.[1] (ECF No.

36-2, Ex. 5). The reasons cited in EO 302 for the recission of EO 253 included the

administration of over 18.4 million doses of the COVID-19 vaccine in the State,

"stable rates on key benchmark statistics, such as the number of hospitalized

patients, patients in intensive care, and ventilators in use, and the spot positivity of

COVID-19 tests." (*Id.*). In addition, EO 302 cited guidance from the Centers for

Disease Control and Prevention ("CDC") issued on August 11, 2022 that

recognized "high levels of vaccine and infection-induced immunity and the

availability of effective treatments and prevention tools [that] have substantially

reduced the risk for medically significant COVID-19 illness, and associated

hospitalization and death." (*Id.*). EO 302 further states "in light of the CDC's

updated guidance, and given the progress the State has made, the State can begin to

---

[1] Plaintiffs make no mention of EO 302 in their Amended Complaint, however, the Court
considers it as an undisputedly authentic document attached to Defendants' motion. *See Pension
Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

4

responsibly lift certain mitigation protocols in place. As a result of EO 302, the requirement that unvaccinated covered workers submit to weekly or twice weekly testing was effectively terminated.

B. <u>The Judiciary Mandate</u>

On August 6, 2021 and August 11, 2021, Chief Justice Stuart Rabner and Administrative Director Glenn A. Grant sent a broadcast message announcing the New Jersey Judiciary's COVID-19 vaccination and testing policy. (Am. Compl. ¶¶ 30, 36; ECF Nos. 34-2, 34-7). A memorandum from Administrative Director Grant dated August 11, 2021 set forth further details of the Judiciary's policy. (Am. Compl. ¶ 39; ECF No. 34-8). Citing worsening COVID-19 trends, including the spread of the Delta variant, and the need to prevent further illness and death, the policy required all judiciary staff and state court judges to provide proof of full COVID-19 vaccination status or the results of a weekly COVID-19 test. (Am. Compl. ¶¶ 30, 38; ECF Nos. 34-2, 34-7, 34-8). Those who chose to undergo weekly COVID-19 tests were required to do so from Saturday morning through Wednesday night each week at an approved testing facility and submit the results of the test electronically on an online portal maintained by the Judiciary no later than 11:00 a.m. on the Friday following the test. (ECF No. 34-8). Testing conducted during work hours required employees to use sick leave or request the use of vacation and/or administrative leave. (*Id.*).

Employees who did not submit a negative test result by 11:00 a.m. on Friday were excluded from the work location on the next scheduled on-site workday and could be excluded for up to 24 hours after submission of a negative result. (*Id.*). Excluded employees were required to use administrative, sick or vacation time if remote work was not supported. (*Id.*). Upon exhaustion of available leave, the absence was considered unauthorized and unpaid. (*Id.*).

The policy took effect on August 20, 2021. (*Id.*). Effective September 1, 2022, the policy was terminated based on updated guidance from the CDC. (ECF No. 36-2, Ex. 4).

C. The Legislative Mandate

On September 20, 2021, Christin Knox, Director of Human Resources for the New Jersey Office of Legislative Services ("NJOLS") sent an email to employees detailing NJOLS's COVID-19 vaccination and testing policy. (ECF No. 36-2, Ex. 3). Effective October 25, 2021, the policy required employees to provide proof of vaccination or undergo weekly COVID-19 PCR testing. (*Id.*). Unvaccinated employees were required to test three days prior to submitting results, which were due each Monday by 10:00 a.m. (*Id.*). Failure to submit test results on time required employees to use accumulated leave time. (*Id.*). If accumulated leave was exhausted, leave was unpaid. (*Id.*).

By email dated August 22, 2022, NJOLS announced that the COVID-19 testing policy would be lifted effective September 1, 2022. (ECF No. 36-2, Ex. 6). The reasons for the termination of the NJOLS policy were not cited therein, however, the email notes that NJOLS "will continue to follow CDC guidelines on isolation, quarantine and exposure." (*Id.*). In their moving brief, Defendants assert that the termination of the policies by all three branches of government was "due to the State's consistent application of the CDC's recommendations through common-sense public health interventions—including the vaccination and testing policies . . . ." (ECF No. 36-1 at 19).

## II.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges a federal court's subject matter jurisdiction. In deciding a Rule 12(b)(1) motion, the court must first determine "whether [it] presents a facial attack or a factual attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotation marks and citation omitted). A factual attack challenges the factual allegations underlying the complaint's assertion of jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges the sufficiency of the claim, and therefore, "the court must only consider the allegations of the complaint and documents referenced therein

and attached thereto, in the light most favorable to the plaintiff." *See Aichele*, 757 F.3d at 358 (internal quotation marks and citation omitted). In that regard, a facial motion is handled like a Rule 12(b)(6) motion. *See Leadbeater v. JP Morgan Chase, N.A*, No. CV 16-7655 (JMV), 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). Here, Defendants assert the defense of immunity thereby raising a facial attack. *See Long v. Barrett*, No. 2:17-CV-5741-KM-SCM, 2018 WL 1617702, at *3 (D.N.J. Apr. 3, 2018) (construing motion to dismiss based on sovereign immunity and qualified immunity as a facial challenge to the court's jurisdiction). Therefore, the facts alleged in the Amended Complaint are accepted as true.

Typically, on a Rule 12(b)(1) motion, the burden is on the plaintiff to demonstrate the existence of subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). However, because immunity is treated as an affirmative defense, the party asserting it bears the burden of proving its applicability. *See Garcia v. Knapp*, No. 19-17946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020); *Steele v. Cicchi*, No. CIV.A. 09-3551 MLC, 2014 WL 2168126, at *2 (D.N.J. May 23, 2014).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). A complaint does not need detailed factual allegations. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. However, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555-56, 127 S. Ct. 1955 (internal quotation marks, brackets and citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Courts may reference "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). "Although immunity is an affirmative defense, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotation marks and citation omitted).

### III.

As a threshold matter, Plaintiffs' claims for injunctive and declaratory relief are moot. Article III, Section 2 of the Constitution limits the jurisdiction of federal

courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson,* 415 U.S. 452, 459 n.10, 94 S. Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) (citations omitted). Cases or claims for relief are moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L.Ed.2d 491 (1969) (citation omitted). In other words, "[i]f it is impossible . . . to grant 'any effectual relief whatever to the prevailing party,' then the case is moot." *Clark v. Governor of New Jersey*, 53 F.4th 769, 775 (3d Cir. 2022) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161, 136 S. Ct. 663, 193 L. Ed.2d 571 (2016)). In light of the recission of the Executive, Legislative and Judiciary Mandates, the Court cannot effectually provide any declaratory or injunctive relief to Plaintiffs.

While Plaintiffs do not dispute that the testing mandates are no longer in effect, they contend that their claims are justiciable because the voluntary cessation doctrine applies. (ECF No. 40 at 50). Under the voluntary cessation doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708, 145 L. Ed. 2d 610 (2000) (internal quotation marks and citation omitted). The focal

point of the inquiry is "whether the defendant made that change unilaterally and so may return to its old ways later on." *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020) (internal quotation marks, citation and brackets omitted). Defendants, as the party asserting mootness, bear a "heavy burden" because "it must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Clark*, 53 F.4th at 775 (quoting *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019)).

It is absolutely clear to the Court that there is no reasonable likelihood that a legal controversy substantially similar to the one at issue here will occur again. The Third Circuit's opinion in *Clark v. Governor of New Jersey*, 53 F.4th 769 (3d Cir. 2022) guides the Court's analysis. There, the Court reviewed a challenge to executive orders issued by Governor Murphy that restricted indoor gatherings for religious worship in response to the COVID-19 pandemic. *Id.* at 771. Although the executive orders had been rescinded, Plaintiff-Appellants asserted that the voluntary cessation doctrine applied. *See id.* at 772, 776. The district court dismissed the case as moot, and the Third Circuit affirmed. *Id.* at 774-75. The Third Court's analysis comprised two parts: "(1) whether the same precise situation" – namely the COVID-19 pandemic – will recur; and "(2) whether the Governor will respond to that situation by imposing restrictions similar enough to those he imposed in 2020 and 2021, such that it presents substantially the same

11

legal controversy as the one presented here." *Id.* at 777-78 (internal quotation marks and citation omitted). Several reasons – including enhanced medical knowledge and development to combat the virus and the State's track record in declining to reimpose similar restrictions when COVID-19 cases surged – led the Court to find it implausible that a challenge to another COVID-based gathering restriction would amount to the "*same legal controversy*" as the one before the Court. *See id.* at 778-81 (emphasis in original).

The Third Circuit's reasoning applies with equal force here. To this Court, it is absolutely clear that (1) a global crisis of the same magnitude as the COVID-19 pandemic and (2) testing mandates akin to those imposed by the State are not reasonably likely to recur. As the *Clark* Court noted, "[o]ur knowledge of the virus and its vectors of transmission, the rollout of vaccines, and the availability of therapeutic responses to infection have totally changed the nature of the disease itself, our understanding of it, and our response to it." *Id.* at 778. Indeed, the termination of the testing mandates occurred in response to those developments and CDC guidance that recognized an overall improvement in circumstances surrounding the pandemic. Accordingly, the voluntary cessation doctrine does not revive the mooted claims.

The Court's decision conforms with that of several courts in this circuit that have dealt with similar cases against states and state actors sued in connection with

COVID-related orders that ultimately were rescinded or had expired. *See, e.g.,* *Johnson v. Governor of New Jersey*, No. 21-1795, 2022 WL 767035, at *3 (3d Cir. 2022) (challenge to expired executive order, which allowed security deposits to be applied to rent payment during the COVID-19 pandemic, was moot); *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 230 (3d Cir. 2021), *cert. denied sub nom. Butler Cnty., Pennsylvania v. Wolf*, 211 L. Ed. 2d 482, 142 S. Ct. 772 (2022) (challenge to expired stay-at-home orders, business closure orders, and orders setting congregation limits in secular settings enacted in response to COVID-190 was moot); *Parker v. Governor of Pennsylvania*, No. 20-3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021) (voluntary cessation exception did not apply to mooted challenge of statewide mask mandate that expired by its own terms); *Livesay v. Murphy*, No. CV2017947ZNQTJB, 2022 WL 4597435, at *4 (D.N.J. Sept. 30, 2022) (challenge to executive orders that mandated masking, social distancing and virtual learning became moot because the orders had been rescinded); *Behar v. Murphy*, No. CV 20-05206 (FLW), 2020 WL 6375707, at *3 (D.N.J. Oct. 30, 2020) (challenge to stay-at-home order mooted by the recission of the order).[2]

---

[2] Plaintiffs attempt to distinguish the case at hand on the basis that the mandates at issue did not expire by their own terms. The Court rejects this argument. There is no evidence that the testing mandates were terminated in response to litigation or to evade judicial review. *See, e.g., Johnson*, 2022 WL 767035, at *3; *Cnty. of Butler*, 8 F.4th at 230 ("It is conceivable that the expiration of the executive orders could be opportunistically timed to avoid an unfavorable adjudication, but we have no basis to conclude that has happened here."). Moreover, the Court presumes that

The dismissal of the declaratory and injunctive relief claims leaves Plaintiffs' claim for damages. The Court will address the claims against the state entities and the state officers in turn.

## IV.

Eleventh Amendment sovereign immunity is rooted in this Nation's founding. It is based on the presupposition that "each State is a sovereign entity in our federal system; and . . . it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122, 134 L. Ed. 2d 252 (1996) (internal quotation marks, brackets and citations omitted). As a general rule, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S. Ct. 1347, 1356, 39 L. Ed. 2d 662 (1974); (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890)). Immunity under the Eleventh Amendment also extends to an "arm or instrumentality of the state," which enjoys the same protection as the sovereign itself. *Lewis v. Clarke*, 581 U.S. 155, 162, 137 S. Ct. 1285, 1290, 197 L. Ed. 2d 631 (2017). This is the case because in an action that seeks to recover money from the state, "the state is the real, substantial party in

government entities and officials act in good faith in performing their duties. *See Parker*, No. 20-3518, 2021 WL 5492803, at *4.

14

interest and is entitled to invoke its sovereign immunity from suit . . . ." *Edelman*, 415 U.S. at 663, 94 S. Ct. at 1356, 39 L.Ed.2d 662 (internal quotation marks and citation omitted).

Sovereign immunity is subject to three exceptions under which a suit against a state may proceed: "(1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end ongoing violations of federal law." *L. Offs. of Lucas ex rel. Lucas v. Disciplinary Bd. of Supreme Ct. of PA*, 128 F. App'x 235, 237 (3d Cir. 2005) (citation omitted). The third exception refers to the *Ex Parte Young* doctrine. *Ex parte Young*, 209 U.S. 123, 155–56, 159–160, 28 S. Ct. 441, 52 L.Ed. 714 (1908).

Without any doubt, the State of New Jersey, the New Jersey Supreme Court and the New Jersey Office of Legislative Services are immune from suit. First, the State has neither consented to suit nor waived its Eleventh Amendment immunity. *See Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007). Second, the New Jersey Supreme Court is an arm of the State. *See, e.g.*, *Ehrlich v. Alvarez*, No. 21-2342, 2022 WL 1487021, at *2 (3d Cir. May 11, 2022) ("The various courts, established by the New Jersey Constitution in a unified state-based court system . . . are also entitled to immunity under the Eleventh Amendment as 'arms' of the state."); *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) ("[T]he state courts, its employees, and the judges are entitled to Eleventh Amendment

15

immunity because they are part of the judicial branch of the State of New Jersey, and therefore considered arms of the state."). Lastly, the same holds true for NJOLS, which is "established in the Legislative Branch of the State Government, to aid and assist the Legislature in performing its functions." N.J.S.A. 52:11-55. NJOLS's duty is to "[p]rovide . . . legal, fiscal, research, information and administrative services and assistance *for the Legislature*, its officers, committees, commissions, members and staff." N.J.S.A. 52:11-58 (emphasis added). Any recovery against the state court or NJOLS would, in essence, be funded by the State. In the absence of a waiver or a valid congressional override, sovereign immunity deprives the Court of federal subject matter jurisdiction. Accordingly, the State of New Jersey, the New Jersey Supreme Court and the New Jersey Office of Legislative Services must be dismissed.

Further, Governor Murphy, Chief Justice Rabner and Administrative Director Grant are immune from suit for damages in their official capacities. Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (citations omitted); *see Durham v. Dep't of Corr.*, 173 F. App'x 154, 156 (3d Cir. 2006) (affirming dismissal of claims against individual corrections officers sued in their

official capacities). Likewise, Plaintiffs' section 1983 claim, which appears to be made only against the Individual Defendants, must also be dismissed. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71, 109 S. Ct. at 2312, 105 L. Ed. 2d 45. The claims against the Individual Defendants in their official capacity will also be dismissed.

Plaintiffs assert two exceptions to sovereign immunity apply. First, Plaintiffs contend, in a conclusory manner, that the "individual defendants cannot claim sovereign immunity under Ex parte Young." (ECF No. 40 at 49). In *Ex parte Young*, the Supreme Court carved out a limited exception to sovereign immunity and held that "a state official is stripped of his official or representative character and thereby deprived of the State's immunity . . . when he commits an ongoing violation of federal law." *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) (internal quotation marks and citations omitted). Where a state official commits an "ongoing violation of federal law," a private plaintiff may sue the state official in his or her official capacity. *Id.* at 238. Importantly, *Ex parte Young* "has been narrowly construed" and "applies only to the precise situation of a federal court commanding a state official to do nothing more than refrain from violating federal law." *Waterfront Comm'n*, 961 F.3d at 238 (internal quotation marks and citation omitted); *see Williams ex rel.*

*Bookbinder v. Connolly*, 734 F. App'x 813, 816 (3d Cir. 2018) (affirming dismissal of complaint that sought retroactive relief against the State).

Plaintiffs do not contest that the COVID-19 testing policies issued by the Executive, Legislative and Judiciary branches of government have been rescinded or terminated. Indeed, they acknowledged this very fact in the withdrawal of their Motion for a Temporary Restraining Order. (ECF No. 30). In light of the recission of the mandates, there is no ongoing violation of federal law, and *Ex parte Young* does not apply.

In another blanket statement, Plaintiffs cite *PennEast Pipeline Co. v. New Jersey*, — U.S. —, 141 S. Ct. 2244, 210 L. Ed.2d 624 (2021) to assert that "the state has agreed to suit in the plan of the convention." (ECF No. 40 at 49). In that case, PennEast sought to exercise its federal eminent domain power under the Natural Gas Act, 15 U.S.C. § 717f(h), to condemn state-owned property for the construction of an interstate gas pipeline. *Id.* at 2253. The district court denied the state's motion to dismiss on sovereign immunity grounds and granted a condemnation order. *Id.* On appeal, the Third Circuit vacated and remanded the case for dismissal because it concluded that § 717f(h) did not clearly delegate to certificate holders authorized with the federal eminent domain power the right to file condemnation actions against nonconsenting states. *Id.* at 2254. The Supreme Court granted certiorari and reversed. *Id.* at 2263. A nonconsenting state "may be

18

sued if it has agreed to suit in the 'plan of the Convention,' which is shorthand for the structure of the original Constitution itself." *Id.* at 2258. Notably, the Court explained that "[t]he plan of the Convention contemplated that States' eminent domain power would yield to that of the Federal Government 'so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution.'" *Id.* at 2259 (quoting *Kohl v. United States*, 91 U.S. 367, 372, 23 L. Ed. 449 (1875)). A condemnation action by a party equipped with the power of federal eminent domain "falls comfortably within the class of suits to which States consented under the plan of the Convention." *Id.* The Court has recognized waivers of sovereign immunity under the plan of the Convention in bankruptcy proceedings, suits by other states and suits by the Federal Government. *Id.* at 2258 (citing cases). This case, which involves government-ordered medical testing prompted by a public health emergency and unprecedented pandemic, does not even remotely fall within any recognized class of suits to which States consented under the plan of the Convention.

As none of the exceptions to sovereign immunity apply, the Court will dismiss the claims for damages against the State of New Jersey, the New Jersey Supreme Court, the New Jersey Office of Legislative Services, Governor Murphy, Chief Justice Rabner and Administrative Director Grant in their official capacity.

Thus, the only remaining issue is Plaintiffs' damages claim against the Individual Defendants in their personal capacity.

## V.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) (citations omitted); *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 823, 172 L. Ed. 2d 565 (2009). Qualified immunity protects a state official "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed.2d 1068 (2004)). While state officials may "execute their duties without the constant threat of litigation, it is 'no license to lawless conduct.'" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Harlow*, 457 U.S. at 819, 102 S. Ct. 2727, 73 L.Ed.2d 396)). "The standard for qualified immunity is tilted in favor of shielding government actors and 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the

law.'" *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (quoting

*Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed.2d 589 (1991)).

Courts conduct a two-step inquiry to address qualified immunity claims.

*Pearson*, 555 U.S. at 232; *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150

L. Ed.2d 272 (2001). First, the court must determine "whether the facts that a

plaintiff has alleged . . . or shown . . . make out a violation of a constitutional

right." *Pearson*, 555 U.S. at 232. Second, the court must determine "whether the

right at issue was 'clearly established' at the time of defendant's alleged

misconduct." *Id.* A right is clearly established when it is "sufficiently clear that

every reasonable official would have understood that what he is doing violates that

right." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed.

2d 985 (2012) (internal quotation marks, citations, and brackets omitted). "[T]he

right allegedly violated must be established, not as a broad general proposition, . . .

but in a particularized sense so that the contours of the right are clear to a

reasonable official." *Id.* at 665 (internal quotation marks and citations omitted); *see

also Zaloga*, 841 F.3d at 175 ("[T]he right should be framed in terms specific

enough to put 'every reasonable official' on notice of it . . . .").

Courts may "exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct.

at 818. As the Supreme Court noted, judicial resources may be conserved by bypassing the first step because "[i]n some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Id.* "[U]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (internal quotation marks and citation omitted).

The Court's begins its analysis with the second factor of the *Saucier* framework – whether a right was clearly established. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). Courts "typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017). Plaintiffs assert violations of their constitutional rights under the First, Fourth and Fourteenth Amendments and the New Jersey State Constitution, however, the Court is not persuaded that the contours of these rights are sufficiently particular to the circumstances at hand such that a reasonable officer understood what he or she did violated those rights. The particular right at issue –

22

the right to be free from government-mandated workplace testing of an infectious disease – has never been recognized, let alone addressed by courts. The testing mandates were implemented in the throes of a rare, once-in-a-century global health crisis for which guidance has constantly evolved. It follows then that it was not sufficiently clear to a reasonable official that what he or she was doing violated that right.

Because the clearly established standard has not been satisfied, the Court need not decide whether the alleged facts make out a violation of a constitutional right.[3] *See Zaloga*, 841 F.3d at 174 (declining to conduct any analysis on the first prong where the second prong was not met). Proceeding to address the first *Saucier* factor would be an "academic exercise." *Pearson*, 555 U.S. at 237. As such, Governor Murphy, Chief Justice Rabner and Administrative Director Grant are entitled to qualified immunity from the claims made against them in their personal capacity.

---

[3] Even if the Court were to reach that issue here, it has long been recognized that some "restraints" on liberties secured by the Constitution may be necessary for the common good. *Jacobson v. Massachusetts*, 197 U.S. 11, 26, 25 S. Ct. 358, 49 L. Ed. 643 (1905) (upholding state's compulsory vaccination law enacted during the smallpox epidemic to protect the public health and safety). *Jacobson* has been relied upon by several courts that have upheld the constitutionality of COVID-related restrictions. *See Smith v. Biden*, No. 1:21-CV-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021).

## VI.

For the reasons stated above, Defendants' Motion to Dismiss is granted with prejudice. Based on the grounds for dismissal, any amendment to the complaint would be futile. An appropriate Order follows.



_____

PETER G. SHERIDAN, U.S.D.J.